## BADER *v.* VAJEN.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; CONCEPTION; AMENDMENT.

1. He is to be regarded as the true inventor who first reduces to practice an idea or device from a mere abstraction to a concrete form, in the absence of proof that he has only elaborated the ideas of others, or of proof that there has been prior conception of the invention by another, with a showing of due diligence in reducing it to practice.

2. Reduction to practice by one person would not avail him as against another, if he merely obeyed instructions of such other person and gave effect to the conceptions of the latter; but upon him who would overcome the presumption that the person who first reduced to practice was the first to conceive, the burden rests of doing so by satisfactory evidence; and where there is oath against oath, the presumption remains unimpaired.

3. Testimony adduced by a party to an interference proceeding to prove a disclosure prior to the date of disclosure alleged in his preliminary statement is inadmissible and will be disregarded, where no amendment of such statement has been allowed.

No. 111. Patent Appeals. Submitted January 10, 1899. Decided February 9, 1899.

HEARING on .an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed in part and affirmed in part.*

14 Ct. App.—17

The facts are sufficiently stated in the opinion.

*Mr. Vernon E. Hodges* for the appellant.

*Mr. Chester Bradford* and *Mr. E. W. Bradford* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding. The subject of controversy is defined as follows:

"1. A fireman's smoke-protector in which the casing thereof is composed of two thicknesses, the outer thickness being fire-proof and substantially impermeable to smoke and gas, and the inner thickness being porous or absorbent.

" 2. A fireman's smoke-protector, including with the casing the earpieces, said earpieces being composed of tubulous projections, screw-caps covering said projections and having perforations therein, and sounding-plates within said caps immediately under said perforations.

"3. A smoke-protector, comprising the combination with the casing and the air-chamber thereof, of a supply-conduit leading into said chamber, a valve adapted to open and close said conduit, an outlet-conduit leading from said chamber, a valve adapted to open and close said outlet, and provided with means whereby it may be operated by the wearer of the helmet, and a valve mounted between the air-chamber and the casing and adapted to regulate the quantity of air passing into the casing independently of the first mentioned valve."

The purpose of the invention, as is apparent, is to produce a safe covering or protection for the heads of firemen or other persons having occasion to enter burning buildings or to become exposed to immediate contact with flame or smoke; and three several features of the device are stated in the three several counts of the issue. The first count is for the general material of the protector or helmet, the casing of

which is composed of two thicknesses of material, ordinarily leather, although not necessarily confined thereto, the outer substance being substantially fireproof and the inner being porous and absorbent. The second part of the device, which is set forth in the second count, is an apparatus for hearing; and the third part of the device, which is the subject of the third count, is an air chamber for holding and supplying fresh air.

Under date of July 28, 1891, a patent was issued to the appellant, William Bader, for a fireman's smoke protector of the class of devices here in issue. He was a piano maker and tuner, employed as a workman in a music store in Indianapolis, in the State of Indiana, and he does not seem to have been a professional inventor, or even specially interested in the matter of devices of the kind for which he procured his patent. The device seems to have been tested during the following year, and it is claimed to have given satisfaction; but that the satisfaction was of a quite limited character is evident from the sequel. However, the device then made and used furnished the basis for all the subsequent efforts for improvement, although it does not appear from the record that anything further was done in the matter by Bader for nearly two years thereafter.

In October or November of 1893 the appellee, Willis C. Vajen, also a resident of the city of Indianapolis and at the time, it would seem, engaged in the business of dealing in real estate, saw a photograph of the device in the music store in which Bader was employed, became interested in the matter, and subsequently had an interview with Bader in regard to it. The result of their negotiations was that the two entered into a contract to complete and exploit the Bader smoke protector. In and by this contract, which bears the date of December 14, 1893, Bader agreed to convey to Vajen a one-half interest in all the patents—it does not appear that there was more than one—held by him for the smoke protector and in all the models and other things

appertaining thereto, and to "aid in building new models, adding thereto such new improvements as might be agreed upon by both parties;" and Vajen, on his part, was to assist Bader "in deciding upon the best methods and new additions which may be deemed necessary in perfecting the above mentioned patent smoke arrester," and to "join Bader in making an effort to organize a stock company from which to gain or procure funds from which to manufacture the above mentioned patent smoke arrester." And the patent or patents were to be assigned to such stock company, the majority of the stock of which was to be held by Vajen and Bader and in the immediate control of Vajen, who was to hold the proxy of Bader.

In pursuance of this contract, Bader, on January 13, 1894, conveyed the specified one-half interest in the patent to Vajen, and Vajen, after vainly endeavoring, as it would appear, to engage others in the enterprise, formed a company or corporation, under the laws of the State of Indiana, by the name of "The Vajen and Bader Company," with himself as the sole owner of it; and under date of July 3, 1895, an agreement was executed purporting to be made by Bader and Vajen on the one side, although throughout the writing the expression "the party of the first part" in the singular number is always used, and "The Vajen and Bader Company" on the other side, whereby the exclusive right to manufacture and sell the patented article was granted to this company and "the party of the first part" was to receive a certain stipulated royalty.

Four different specimens of helmet or smoke protectors were constructed before an article was produced which was regarded as marketably successful. These are designated in the record of the case as helmets Nos. 1, 2, 3 and 4, respectively, and they have an important bearing upon the merits of the controversy between the parties.

Helmet No. 1 was the original construction by Bader, under his patent in 1891 or 1892, before he became ac-

quainted with Vajen, and was the construction of which the photograph attracted the attention of Vajen in October or November of 1893. It contains none of the inventions of the present issue.

Helmet No. 2, which likewise contained none of the improvements now in controversy, was constructed after the parties had become acquainted. It was made under Bader's directions at Vajen's request and expense. It was begun about July of 1894, and finished in September or October of 1894. This helmet was taken to Chicago in October, 1894, and was exhibited there to members of the fire department of that city, who found it unsatisfactory and some of whom suggested various improvements that should be made in it. Vajen and Bader went together to Chicago to exhibit the article.

Helmet No. 3 was thereupon made, and completed on March 17, 1895. It was made under the direction of Bader while Vajen was absent in California, whither he had gone soon after the test of helmet No. 2 in Chicago, and whence he did not return until May 24, 1895. He had, however, before his departure ordered the making of another helmet by Bader, and the matter was the subject of considerable correspondence between the parties during this period of Vajen's absence in California. This helmet No. 3 contains the first of the three devices enumerated in the issue, and this was the first time that any one of these devices appeared. But it was held by the Patent Office to have contained neither the matter of the second nor that of the third count of the issue, although there was in it a part, perhaps, of the matter of the second count, but confessedly not the complete apparatus. This helmet did not prove entirely satisfactory.

Helmet No. 4, containing all the issues of the interference, was then made, after the return of Vajen from California. It was commenced about July of 1895 and finished in the course of that year. It was constructed by

the workmen who had been accustomed to work for Bader, but under the immediate superintendence of Vajen himself; but whether it was the device of Bader or Vajen that went into the work is the subject of the present controversy.

Vajen was the first to apply for a patent, which he did on August 7, 1896. Bader's application, which was dated on the same last-mentioned day, August 7, 1896, reached the Patent Office on August 10, 1896. As there had been an actual reduction of the invention to practice several months before this, the difference in the date of application is of little consequence beyond throwing upon Bader the burden of proof. The parties were placed in interference and they filed their preliminary statements. Bader in his statement says that he conceived the invention on or about October 1, 1894; that he disclosed it to others about the middle of October, 1894, (the 20th of October, 1894, is the precise day fixed by his testimony); that he made sketches of it about January 8, 1895; that a full-sized model was made and the invention reduced to practice on or about March 17, 1895. Vajen in his statement says that he conceived the invention constituting the subject-matter of the first count of the issue in or about the month of March, 1890, that of the second count in or about the month of January, 1894, and that of the third count in or about the month of July, 1894. He also alleges that of the first device he made a sketch on October 15, 1894, explained it to others about the same time, began to construct a full-sized model or sample about November 19, 1894, and completed the apparatus about March 5, 1895; that of the second device he made a sketch and explained it to others about January of 1894, made no model, but completed a full-sized device illustrating the invention about July of 1895, and that of the third device he made a drawing and explained the same to others about the time of his conception of it in or about the month of July of 1895, made no model, but in

or about July of 1895 ordered a full-sized apparatus, which
was completed within two months thereafter.

It sufficiently appears from the testimony that the reduc-
tion to practice in the case should inure to the benefit of the
one or the other party, according as the one or the other
may be found to have conceived the invention, and the
controversy therefore is as to which of the two parties was
the true inventor of the devices in question by original con-
ception thereof.

Upon the testimony the examiner of interferences found
in favor of Bader; the board of examiners-in-chief, upon
appeal from the examiner, reversed the decision of the latter
and found in favor of Vajen; and upon appeal from the
board of examiners to the Commissioner of Patents, the lat-
ter affirmed the decision of the board of examiners. From
the decision of the Commissioner the case is now brought
here on appeal.

1. The appellee, Vajen, claims to have conceived the idea
of the subject-matter of the first count of the issue in March
of 1890, but to have made no disclosure of it to anyone be-
fore October 15, 1894, the day of the return of himself and
Bader from Chicago, where they had gone, as already stated,
to exhibit helmet No. 2, and the disclosure then claimed to
have been made is alleged to have been made to Bader.
This statement Bader vigorously and positively denies,
and there is no other evidence of it. In itself the state-
ment is improbable in the extreme. For fully one year
before this alleged disclosure Vajen had been in constant
relation and in constant intercourse with Bader to com-
plete and perfect the invention of the latter, and the en-
terprise into which both had jointly entered; and yet
during all that time he never opened his lips to Bader or to
anyone else about the perfect idea which he claims to have
then had and to have had for three or four years before that
time. This is simply incredible. It is very clear to us that

before he went to Chicago, on October 14, 1894, Vajen had
no conception whatever, certainly no definite conception, of
the invention stated as the first claim of the present issue.
Neither did Bader. In fact, Bader admits that he had no
conception of it at that time, and that he only conceived it
after his return, on or about October 20, 1894. There is
reason to believe, from the testimony of Sweenie, the chief
of the fire department of the city of Chicago, whose deposi-
tion has been taken in the case on behalf of Vajen, that the
merit of the primary conception of all the devices here in-
volved is due to Sweenie, and not either to Vajen or Bader.
But Sweenie is not here claiming them, and whether the
parties to this proceeding merely adopted his suggestions, or
whether they evolved some new conceptions from the ob-
jections made by him to the device shown in helmet No. 2,
it is very clear that neither Vajen nor Bader had any idea
of the subject matter of the first count of the present issue
before their interview with Sweenie on the 14th or 15th of
October, 1894. As we have said, Bader admits this, but
Vajen does not. Vajen's claim, however, of any prior con-
ception is wholly inadmissible.

Vajen claims to have disclosed his conceptions to Bader
on the return trip from Chicago on October 15, 1894, and to
have directed him then and there to proceed as soon as
possible to carry it into effect. This is the only disclosure
that is sought to be proved by any testimony that could
reasonably be deemed sufficient, and that disclosure and the
testimony in support of it Vajen seeks to fortify by the pro-
duction of a memorandum of the conversation which he
then had and of the instructions which he then gave to
Bader. But the memorandum is not corroborated by any
proof whatever other than the testimony of Vajen himself,
and the conversations and the instructions claimed to have
been given by him at that time are denied in every detail
by Bader, who testifies positively and explicitly that no
such conversation was then or at any other time had, and

that no such instructions were ever given and no such dis-closure was ever made to him.   Vajen started for California on October 27, 1894, where he remained until May 24, 1895; and no other or further disclosure is shown to have occurred before his departure, and a most careful examination of the correspondence between the parties during Vajen's stay in California, in which correspondence we would naturally expect to find ample evidence of the true relation of the parties to each other, fails utterly to manifest any claim of invention on the part of Vajen.

During Vajen's absence in California, Bader completed helmet No. 3.   He seems to have commenced it about the 19th or 20th of November, 1894, and to have finished it about March 5, 1895.   This helmet No. 3 is conceded to show the subject matter of the first claim of the issue, and confessedly it was the work of Bader during the period of the absence of Vajen in California.   *Prima facie*, therefore, Bader was the first to reduce to practice the invention set forth in the first of the claims contained in the present issue.

Now, it is an elementary principle in the patent law that he who first reduces to practice is to be regarded as the true inventor of the idea or device so reduced from a mere abstraction to a concrete form, in the absence of proof that he has only elaborated the idea of others, or of proof that there has been prior conception of the invention by another or others, with a showing of due diligence in the way of effort to reduce it to practice.   Reduction to practice by Bader would not, of course, avail him as against Vajen, if it were shown that Bader was merely obeying the instructions of Vajen and giving effect to the conceptions of the latter.   But upon him who would overcome the presumption that to the person who has first reduced to practice belongs the merit also of priority of conception, the burden rests of doing so by satisfactory evidence.   That burden rests upon Vajen in this instance.   How has he borne it?   We can only say

that in our opinion he has not proved his case. He has
sworn to the disclosure which evidences his alleged concep-
tion of the invention. Bader has denied that disclosure,
which is not claimed to have been made at this time to any
other person than himself. The utmost, therefore, that can
be said in favor of Vajen is that the testimony is balanced.
Necessarily the presumption remains unimpaired that the
maker of the improvement was likewise the conceiver of
the improvement. And there are other presumptions, too,
in favor of Bader as the conceded inventor of the original
device which it was sought to improve, and as the person
evidently by whom all improvements were expected to be
made; for it is apparent from the contract of December 14,
1893, that it was Bader and not Vajen who was expected to
devise new improvements in the subject matter in which
they both then became jointly interested, and that the
province of Vajen in the business was not to invent, but to
exploit the inventions of Bader. Of course this would not
have precluded Vajen from becoming an inventor himself
in the same field; but we are now dealing with the presump-
tions of the case and the necessity which was upon Vajen, if
he invented anything, to show the fact of such invention
by satisfactory affirmative proof. This, we think, he has
wholly failed to do.

We do not ignore the fact that several intelligent and
trustworthy witnesses have testified on behalf of Vajen that,
in the spring of 1894, when, as it would seem, he was desirous
of forming a company to exploit the invention of the Bader
patent, Vajen spoke to them of improvements in the structure
which he designed to make. But we concur with the ex-
aminer of interferences in the opinion that this testimony is
too vague and insufficient to show that Vajen had any ade-
quate idea at this time of the improvements which were
afterwards made. In fact, no one of these witnesses de-
scribes with any definiteness what the proposed improve-
ments were. But there is another consideration which

conclusively disposes of all this testimony, and that is that Vajen, in his preliminary statement does not claim to have disclosed his alleged invention to anyone before October 15, 1894. The testimony in question can not, therefore, be regarded as having any weight.

Upon the record before us we are of opinion that Bader, and not Vajen, was the true inventor of the device described in the first count of the issue and specified as the first claim of the matter in interference; and with reference to that claim we must adjudge priority of invention to Bader.

2. In the determination of the controversy with reference to the claims specified in the second and third counts of the issue, we may with propriety apply the same rule as we have applied with reference to the first claim. It has been found by the Patent Office that the devices mentioned in the second and third counts appear for the first time in helmet No. 4; and the finding seems to be acquiesced in by both parties, although there is some contention on behalf of Bader that a part of the device of count 2 was shown in helmet No. 3. Now it is beyond question that helmet No. 4, with these two devices in it, was constructed, not by Bader, but under the immediate direction and superintendence of Vajen, without any co-operation from Bader, who, according to the testimony of his own principal witness, was so difficult to be dealt with at the time that Vajen, in the language of the witness himself, " could no nothing with him or get anything out of him." It is true that the work in part, so far as it agreed with that of helmet No. 3, was done for Vajen by the same men who had worked for Bader. But in the parts which constitute the special subject matter of counts 2 and 3, these workmen had no part; and it does not appear distinctly in the record by whom these special features were manufactured. But that they were introduced by the special direction of Vajen we regard as conclusively shown. Vajen therefore must be regarded as the person who reduced these two inventions to practice; and unless he received the

conception or idea from Bader, he must be regarded as the true and only inventor of them. The burden is upon Bader to prove that the conception originated with him and was communicated by him to Vajen; and we think that the testimony adduced on his behalf, without any reference to that of Vajen, wholly fails to sustain his claim to the invention.

The testimony of Bader himself on this point is so inconsistent and contradictory, possibly in consequence to some extent of his imperfect knowledge of the English language, that we can not give it any force or effect whatever. He is strangely silent in his preliminary statement in the matter of discriminating between the three several features of the invention. He admits in his testimony that he never communicated to Vajen directly either one of the two inventions specified in the second and third counts; but he claims that they were his ideas, conceived even before helmet No. 3 was made, but strangely omitted from that construction, and were communicated to Vajen by one Sulgrove, the workman who had made the casings of the first three helmets for him (Ba-der) and who subsequently made the casing of helmet No. 4 for Vajen. It is sought to corroborate this claim by the testimony of Sulgrove. But Sulgrove, although he testified that Bader had made some explanations to him about earpieces and the valves of the air cylinder, about the date of which he is probably mistaken, and had also shown him some sketches which were subsequently thrown away, says not one word about communicating with Vajen about the earpieces. He does say in a vague way that he said something to Vajen about the manner in which the supply of air to the helmet should be regulated. But he testifies very distinctly and positively that at this time Vajen was unable to do anything with Bader and could get nothing out of him. The testimony is wholly insufficient to show communication of either of these two inventions by Bader to Vajen, and there is no satisfactory proof that Bader ever had any

adequate conception of them before their embodiment in helmet No. 4 by Vajen.

As to the subject matter of counts numbered two and three, therefore, judgment of priority must be awarded to Vajen.

If follows from what we have said that the decison of the Commissioner must be in part reversed and in part affirmed—reversed as to the matter of count numbered one of the issue, as to which judgment of priority of invention is awarded to the appellant, Bader, and affirmed as to the matter of counts two and three of the issue, as to which judgment of priority of invention is awarded to the appellee, Vajen.

The clerk of the court will certify this opinion and the proceedings of this court in the cause to the Commissioner of Patents, according to law.

On February 24, 1899, a motion for rehearing was filed by *Mr. Bradford* on behalf of the appellee, Vajen. On February 24, 1899, the motion was denied.

Mr. Justice MORRIS on February 28, 1899, delivered the opinion of the Court:

A motion for a rehearing has been filed in this cause on behalf of the appellee, Vajen, with reference to our conclusion in regard to the claim of the issue numbered one, for which we held that the appellant, Bader, was entitled to judgment of priority of invention. The motion is based upon the ground that we have misunderstood the force of the testimony on behalf of the appellee, which is claimed to show disclosure by him of the alleged invention in the winter of 1893–4; and in view of an important question of pleading and practice that is incidentally, although perhaps unintentionally, raised, we are disposed to give the motion more than usual consideration.

We have not mistaken the force and purport of the testimony to which reference is made. That testimony, which

is enlarged upon at considerable length in the petition for a rehearing, consists of the depositions of several respectable citizens of Indianapolis, who have testified in regard to disclosures and statements concerning the alleged inventions made to them by the appellee, Vajen, in the winter of 1893–4 or early in the spring of 1894. In our opinion in the case we have stated that we have regarded this testimony as too vague and insufficient to prove the alleged disclosure or the scope and character of the invention that was sought to be disclosed; and we find no reason to change our view of the testimony in that regard.

But apart from this consideration, counsel seem to ignore or forget the record which the appellee himself has made in his preliminary statement. In that statement, with reference to claim numbered one of the issue, the appellee has stated under oath, in accordance with the rules of the Patent Office and the requirements of the patent law, "that he made a sketch illustrating said invention about October 15, 1894, and explained the same to others at or near the same time." This is the first and only disclosure claimed by the appellee in his preliminary statement to have been made by him to anyone. Now, the rules of the Patent Office prescribe that "the parties will be strictly held in their proofs to the dates set up" in their preliminary statements; and this is in accordance with right reason and with the principles of justice, for otherwise opposing parties might be misled to their detriment. It is incompetent, therefore, for the appellee in this case, without an amendment of his preliminary statement, if there was good ground for amendment, to adduce proof of any disclosures of the invention by him prior to October of 1894. All testimony in regard to previous disclosures was inadmissible and should be disregarded. By the testimony, to which so much importance is now attached by the appellee, it was sought to go behind the preliminary statement and to prove an alleged disclosure, of which the opposing party was given no notice by the

statement.   We do not think that this should be sanctioned or permitted.

The petition for a rehearing is *denied*.

The clerk of the court will certify this opinion and the proceedings in the cause to the Commissioner of Patents according to law.